IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A., | ) | Case No. 3:16-cv-130 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFREY A. CARNELL, ANNA M. CARNELL, RYAN P. JAY, and LARRY E. JAY, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Wells Fargo Bank, N.A. brought this case against two mortgagors—Jeffrey A. Carnell and Anna M. Carnell—and the two notary publics who notarized the underlying mortgage documents, Ryan P. Jay and Larry E. Jay, after the Carnells allegedly defaulted on their mortgage payments. Wells Fargo primarily seeks an order quieting title to the property underlying the mortgage. Pending before the Court is Jeffrey Carnell's motion to dismiss (ECF No. 26). For the reasons that follow, his motion to dismiss is **DENIED**.

## I. Background[1]

On October 14, 2005, Jeffrey A. Carnell and Anna M. Carnell acquired property located in Bedford County, Pennsylvania. (ECF No. 1 ¶ 6, 10.) The Carnells were married at the time and acquired the property as tenants by the entireties. (*Id.* ¶ 10.) On September 5, 2006, the Carnells signed a mortgage against the property in favor of M&T Mortgage Corporation for a loan of $82,400.00. (*Id.* ¶ 11.)

---

[1] The following facts are alleged in Wells Fargo's complaint and the exhibits thereto.

After obtaining their mortgage with M&T, the Carnells twice refinanced their mortgage through Wells Fargo.  (*See id.* ¶¶ 14, 25.)  The Carnells obtained their first refinance loan—which was for $101,952.00—in June 2008.  (*Id.* ¶¶ 13-14.)  They obtained their second refinance loan—which was for $156,548.00—in March 2009.  (*Id.* ¶¶ 23-24.)  For both refinance loans the Carnells executed refinance mortgages against the property in favor of Wells Fargo and executed affidavits of title.  (*Id.* ¶¶ 14-15, 25-26.)

In March 2009, the Carnells executed also a uniform settlement statement related to the 2009 refinance mortgage.  (*Id.* ¶¶ 29-31.)  This statement provides that, out of the $156,548.00 loan, Wells Fargo disbursed $102,548.00 to satisfy the 2008 refinance mortgage and disbursed $54,000.00 as cash to the Carnells.  (*Id.*; ECF No. 1-19 at 2.)  In April 2009, the 2008 refinance mortgage was marked as satisfied of record with the Officer of the Recorder of Deeds of Bedford County.  (ECF Nos. 1 ¶ 33, 1-20 at 2.)

Both the 2008 mortgage and the related affidavit of title were signed by Jeffrey and Anna Carnell and notarized by Larry Jay.  (*See* ECF Nos. 1 ¶ 16, 1-7 at 16-17, 1-8 at 5.)  Similarly, the 2009 mortgage and related affidavit of title were signed by the Carnells, but notarized by Ryan Jay.  (*See* ECF Nos. 1 ¶ 26, 1-15 at 17-18, 1-16 at 5.)  Records from the Pennsylvania Department of State disclose that both Larry Jay and Ryan Jay were notary publics commissioned in the Commonwealth of Pennsylvania at the times they notarized the Carnells' signatures.  (ECF No. 1 ¶¶ 17, 28.)

On March 14, 2012, Wells Fargo sued the Carnells in the Bedford County Court of Common Pleas to foreclose on the 2009 mortgage.  (*Id.* ¶ 34; ECF No. 1-21.)  Wells Fargo alleged that the Carnells had defaulted on the mortgage and that they had made no payments since

September 2010. (ECF No. 1-21 at 4.) In May 2012, Jeffrey Carnell filed an answer in that case, stating that the M&T mortgage was "legitimate" but denying that he executed the 2008 and 2009 Wells Fargo mortgages. (ECF Nos. 1 ¶ 35, 1-22 at 2-4.) In his answer, Jeffrey Carnell alleged that Anna Carnell—without his permission—had either signed his name or had someone else sign his name on the mortgage documents. (ECF No. 1-22 at 4-5.)

In May 2014, Wells Fargo submitted requests for admissions regarding the execution of the mortgage documents to Anna Carnell. (ECF No. 1 ¶ 36.) In her responses to those requests, Anna Carnell stated that Jeffrey Carnell was not present at the closing on the 2008 and 2009 mortgages, that he did not appear before Larry Jay or Ryan Jay, that he did not sign the mortgages, and that she signed Jeffrey Carnell's name to both documents with his permission. (ECF Nos. 1-23, 1 ¶ 37.)

On June 10, 2016, Wells Fargo filed this case against the Carnells and Larry Jay and Ryan Jay. Wells Fargo primarily seeks an order quieting title to the property and declaring that the 2009 mortgage encumbers the property as a valid mortgage lien. (*See* ECF No. 1 ¶¶ 39-46.) Wells Fargo also pleaded nine additional counts in the alternative—some against the Carnells, some against Anna Carnell and Larry Jay, and some against Anna Carnell and Ryan Jay—requesting that an equitable lien or mortgage be imposed and for breach of contract, fraud, and negligent representation.

On November 18, 2016, Jeffrey Carnell filed the motion to dismiss before the Court (ECF No. 26.) Jeffrey Carnell argues that this Court should abstain from exercising jurisdiction because of Wells Fargo's parallel suit to quiet title in the Bedford County Court of Common Pleas

and because Pennsylvania Rule of Civil Procedure 1062 provides that actions to quiet title "may be brought in and only in a county in which the land or a part of the land is located."

## II. Jurisdiction

Under 28 U.S.C. § 1332(a)(1), district courts have original jurisdiction over cases between citizens of different states if the amount in controversy exceeds $75,000. For diversity purposes, a national banking association—like Wells Fargo (ECF No. 1 ¶ 1)—is considered a citizen of "the State designated in its articles of association as its main office." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006); *see also* 28 U.S.C. § 1348. In its complaint, Wells Fargo states that its main office is located in South Carolina and alleges that all defendants are domiciled in Pennsylvania. (ECF No. 1 ¶¶ 1-5.) Further, the value of the mortgage underlying this dispute exceeds $75,000. (*Id.* ¶ 24.) This Court therefore has original jurisdiction under 28 U.S.C. § 1332(a)(1).

## III. Standard of Review

### A. Applicable Standard of Review

A threshold issue raised by Jeffrey Carnell's[2] motion to dismiss is the applicable standard of review. Jeffrey in his brief recites the standard applicable to motions to dismiss made under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 28 at 1-3). A Rule 12(b)(6) motion challenges the sufficiency of a complaint, and in ruling on such a motion the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be

---

[2] For purposes of clarity, and because the remainder of this memorandum opinion discusses Jeffrey Carnell only, the Court will hereinafter refer to Jeffrey Carnell by his first name only. The Court intends no disrespect by doing so.

entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). Wells Fargo, however, contends that Jeffrey's arguments relate to subject-matter jurisdiction and argues that his motion therefore arises under Rule 12(b)(1). (ECF No. 31 at 2-3.)

Which rule applies is a distinction that might make a difference; there are two types of Rule 12(b)(1) motions—factual and facial—and each has a different standard of review. The standard of review for a facial Rule 12(b)(1) motion is the same as that for a Rule 12(b)(6) motion—meaning the court construes the alleged facts in the light most favorable to the plaintiff. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (citing *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)). But in deciding a factual Rule 12(b)(1) motion, a court may both consider and weigh evidence outside of the pleadings. *Id.* (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).

In his motion, Jeffrey argues that this Court should abstain from exercising jurisdiction over this case. The United States Court of Appeals for the Third Circuit has stated that "a dismissal (without retention of jurisdiction) on abstention grounds is in the nature of a dismissal under [Rule] 12(b)(6)." *Heritage Farms, Inc. v. Solebury Township.*, 671 F.2d 743, 745 (3d Cir. 1982). This makes sense; when a court abstains from exercising jurisdiction this necessarily means that the court *has* jurisdiction. *But see Coles v. City of Philadelphia*, 145 F. Supp. 2d 646, 649 (E.D. Pa. 2001) (noting that motions to dismiss raising abstention arguments have also been viewed as Rule 12(b)(1) motions); *Bell Atlantic-Pa., Inc. v. Pa. Pub. Util. Comm'n*, 107 F. Supp. 2d 653, 659 (E.D. Pa. 2000) (treating "invocation of abstention doctrines" as a facial challenge under Rule 12(b)(1)).

Based on the Third Circuit's guidance, the Court views Jeffrey's motion through the lens of Rule 12(b)(6). In deciding a Rule 12(b)(6) motion, the court relies on the complaint, attached exhibits, and may consider matters of public record, including those of other judicial proceedings. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2008); *see also Lumen Const., Inc. v. Brant Const. Co.*, 780 F.2d 691, 697 n.4 (7th Cir. 1985) (in reviewing abstention argument, "the official record of the parallel state case is a proper object for judicial notice"); *Hartford Fire Ins. Co. v. Coastal Int'l, Inc.*, No. 14-cv-6196, 2015 WL 4038905, at *1 n.1 (N.D. Ill. June 30, 2015) ("A court may take judicial notice of matters of the public record, including court records, on a motion to dismiss brought under Rule, 12(b)(1), Rule 12(b)(6), or an abstention doctrine." (citing cases)); *Ryan v. Specter*, 321 F. Supp. 1109, 1110 (E.D. Pa. 1971) (taking judicial notice of public records in deciding abstention issue).

### B. *Younger* Abstention

Federal courts have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821). Thus, provided jurisdiction exists, federal courts have a "virtually unflagging obligation" to exercise that jurisdiction. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976) (citation omitted). And the existence of parallel state-court proceedings involving the same subject matter, without more, does not affect this obligation. *Sprint Commc'ns, Inc. v. Jacobs*, ___ U.S. ___, 134 S. Ct. 584, 588 (2013) (citing *Colorado River*, 424 U.S. at 817).

There are, however, narrow exceptions to this general rule. These exceptions fall under the so-called abstention doctrine. Abstention is a judicially created doctrine under which a federal court will decline to hear a case so that a state court or state agency can. It is a prudential

doctrine, born of federalism concerns, and seeks to avoid unnecessary friction between the federal judiciary and state governments. *See R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500-01 (1941). Nevertheless, abstention is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Allegheny County v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959).

There are various specific situations in which abstention is appropriate. In his motion, Jeffrey invokes *Younger* abstention, which derives its name from *Younger v. Harris*, 401 U.S. 37 (1971). In *Younger*, the Supreme Court held that—in the absence of a showing of bad faith or intent to harass—federal courts should abstain when the moving party seeks to enjoin a state criminal prosecution, "particularly . . . when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." 401 U.S. at 43. Although *Younger*'s holding addressed criminal cases only, "the Supreme Court has since extended *Younger*'s application to bar federal interference with certain state civil and administrative proceedings." *ACRA Turf, LLC v. Zanzuccki*, 748 F.3d 127, 132 (3d Cir. 2014).

In *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989) (*NOPSI*), the Supreme Court examined the contours of *Younger* abstention. *NOPSI* involved an electric utility which sought review in federal court of a state authority's ratemaking decisions. The Supreme Court rejected the argument that the federal court should abstain from exercising jurisdiction and stressed that "only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." *NOPSI*, 491 U.S. at 368 (citing *Colorado River*, 424 U.S. at 817). Those exceptional circumstances exist, the Court held, in three categories of cases. First, *Younger* requires abstention from intrusion into ongoing state criminal prosecutions. *Id.* at 367-

68. Second, certain civil enforcement proceedings require abstention. *Id.* at 368 (citing cases). And third, federal courts should abstain from interfering with pending "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* (citing cases). More recently, in *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013), the Supreme Court stressed that *Younger* is inapplicable outside these three categories, and held, "in accord with *NOPSI*, that they define *Younger*'s scope."

## IV. Analysis

### A. *Younger* Abstention

Jeffrey argues that this Court should abstain from exercising jurisdiction over this case under the principles of *Younger*. But Wells Fargo's state case does not fall within any of the three exceptional categories identified in *NOPSI*. *Younger* abstention is therefore inapplicable.

As a threshold matter, Wells Fargo argues that abstention is inappropriate because it withdrew the state case after it filed this case. (*See* ECF No. 31-1.) Wells Fargo points to two district-court decisions—*Pierce v. Allegheny County Board of Elections*, 324 F. Supp. 2d 684 (W.D. Pa. 2003), and *Teleprompter of Erie, Inc. v. City of Erie*, 537 F. Supp. 6, 9 (W.D. Pa. 1981)—to suggest that abstention is inappropriate when the state case has been dismissed. The Third Circuit, however—in a case that postdates both decisions cited by Wells Fargo—has held that for purposes of *Younger* abstention the current disposition of the state-court proceeding is irrelevant; the determinative factor is the existence of a state proceeding at the time the plaintiff filed the federal case. *See Addiction Specialists, Inc. v. Township of Hampton*, 411 F.3d 399, 409 (3d Cir. 2005) (state proceeding was considered ongoing notwithstanding that it had been stayed); *see also San Remo Hotel v. City & County of San Francisco*, 145 F.3d 1095, 1104 (9th Cir. 1998) ("[O]ur inquiry

on prong one of the *Younger* test is not on what is currently occurring in the state proceedings, but is focused on the narrow question of whether they were pending at the time the federal suit was filed." (citation omitted)); *Martinez v. Martinez*, No. 09-cv-0281, 2010 WL 1608884, at *15 (D.N.M. Mar. 30, 2010) (concluding in dictum that the ongoing-state-proceeding requirement is satisfied "so long as the party has yet to exhaust state appellate remedies or the judgment has not yet been imposed" (citing cases)). Thus, Wells Fargo's withdrawal of the state suit does not appear to be of consequence in resolving Jeffrey's abstention arguments.

Nevertheless, *Younger* abstention is inappropriate because Wells Fargo's state case does (or did) not fall within any of *NOPSI*'s categories. To review, *NOPSI* reaffirmed that *Younger* requires abstention in three categories of cases: (1) ongoing state criminal prosecutions, (2) certain civil enforcement proceedings, and (3) "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." 491 U.S. at 367-68.

The first category does not apply here because Wells Fargo's state case is not a criminal prosecution. And the third category does not apply because the state case does not involve an order "uniquely in furtherance of the state court['s] ability to perform [its] judicial functions." *NOPSI*, 491 U.S. at 368 (citing cases). That category applies to such things as state courts' enforcement of their contempt procedures, *Juidice v. Vail*, 430 U.S. 327 (1977), and postjudgment collection procedures, *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1 (1987). It is not applicable here.

The second category does not apply because the state case is not a civil enforcement action. Decisions applying *Younger* to civil enforcement actions have involved state proceedings "akin to a criminal prosecution" in "important respects." *Huffman v. Pursue, Ltd.*, 420 U.S. 592,

604 (1975); *see also Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (*Younger* abstention appropriate where "noncriminal proceedings bear a close relationship to proceedings criminal in nature"). The civil enforcement actions to which *Younger* applies are usually disciplinary in nature, brought to sanction the federal plaintiff—who is challenging the state proceeding—for some wrongful act. *See, e.g., Middlesex*, 457 U.S. at 433-34 (disciplinary proceedings against lawyer for violation of state ethics rules). Civil enforcement actions that trigger *Younger* are typically brought by state actors and involve official investigations and formal complaints or charges.[3] Wells Fargo's state case does not fit within this genre of cases. It is not "akin to a criminal prosecution," *Huffman*, 420 U.S. at 604, and involves no state actor, investigation, or charges.

Jeffrey's abstention argument is based primarily on a misplaced reliance on *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982). In *Middlesex*, the Supreme Court for the first time held that *Younger* abstention applied in cases involving state administrative proceedings. The plaintiff in *Middlesex* was a New Jersey lawyer who was the subject of an investigation and administrative disciplinary proceeding by the New Jersey state-bar ethics committee. Rather than participate in the disciplinary proceeding, the plaintiff filed

---

[3] Most of the cases cited by Jeffrey actually illustrate this. *See, e.g., Feingold v. Office of Disciplinary Counsel*, 487 F. App'x 743 (3d Cir. 2012) (case brought by disbarred attorney against Pennsylvania state-bar ethics office while disciplinary action by office against attorney was pending); *Miller v. Mitchell*, 598 F.3d 139 (3d Cir. 2010) (case seeking to enjoin district attorney from filing criminal charges); *Williams v. Government of Virgin Islands Bd. of Medical Examiners*, 360 F. App'x 297 (3d Cir. 2010) (case brought by suspended doctor against Virgin Islands Board of Medical Examiners challenging license suspension); *Anthony v. Council*, 316 F.3d 412 (3d Cir. 2003) (case against state-court judges and administrative director in which plaintiffs sought to enjoin contempt orders arising from their failure to pay child support); *Dicesare v. Office of Children, Youth & Families*, No. 11-cv-985, 2012 WL 2872811 (W.D. Pa. July 12, 2012) (case against county child-welfare office involving ongoing child-custody and parental-rights proceeding); *Blair v. Pennsylvania*, No. 12-cv-683, 2012 WL 2572077 (W.D. Pa. July 2, 2012) (case involving administrative proceeding brought by Pennsylvania Board of Nursing).

suit in federal court to enjoin the disciplinary proceeding, arguing that it was unconstitutional. The Supreme Court agreed with the district court's decision to abstain and held that "[t]he policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved." *Middlesex*, 457 U.S. at 432 (citing cases). The Court identified three factors that should be considered for *Younger* to apply to noncriminal judicial proceedings: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. *Id.* Jeffrey asserts that application of *Middlesex*'s factors warrants *Younger* abstention in this case. This Court disagrees.

In *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584 (2013), the Supreme Court limited the application of *Middlesex*'s factors to cases involving quasi-criminal proceedings. Prior to *Sprint*, courts viewed *Middlesex* as requiring abstention so long as its factors were met—without further analysis. *See Gonzalez v. Waterfront Comm'n of the N.Y. Harbor*, 755 F.3d 176, 180-81 (3d Cir. 2014) ("Over the years following *Middlesex*, lower courts engaged in a routine practice of exclusively applying [its] three factors as if they were the alpha and omega of the abstention inquiry.") In *Sprint*, the Supreme Court instructed that *Middlesex*'s factors cannot be "[d]ivorced from their quasi-criminal context," because doing so "would extend *Younger* to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest."[4] 134 S. Ct. at 593. Unmooring *Middlesex* from its quasi-criminal context runs

---

[4] Thus, *Sprint* clarifies that *Middlesex*'s first factor—the existence of ongoing state proceedings that are judicial in nature—actually requires the existence of ongoing *quasi-criminal* state proceedings that are judicial in nature. *See Mulholland v. Marion Cty. Election Bd.*, 746 F.3d 811, 816 (7th Cir. 2014) (noting that after *Sprint*, "[*Middlesex*'s] factors remain relevant, but the critical consideration in evaluating a state civil proceeding is how closely it resembles a criminal prosecution")

afoul of the obligation federal courts have to exercise their jurisdiction and is "irreconcilable with [the Supreme Court's] dominant instruction that, even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.* (citation and internal quotation marks omitted).

Jeffrey cites two cases that did not involve quasi-criminal state proceedings but in which *Younger* abstention was held appropriate: *Schall v. Joyce*, 885 F.2d 101 (3d Cir. 1989) and *Rauso v. Fein*, No. 13-cv-693, 2015 WL 2217411 (E.D. Pa. May 12, 2015). In *Schall*, the Third Circuit applied *Younger* to a constitutional challenge to Pennsylvania's confession of judgment procedures. At the time the federal case was filed, the plaintiff was already involved in state proceedings to set aside a judgment entered against her by confession. The district court stayed the federal case pending the resolution of the state proceedings. Although the defendants in *Schall* included the prothonotary and sheriff who were involved in the initial judgment, the case itself was purely civil in nature. Nevertheless, the Third Circuit concluded that *Middlesex*'s factors were met and that *Younger* abstention therefore applied. *Schall*, 885 F.2d at 111.

*Schall* predates *Sprint* by some 24 years, and it seems questionable that *Schall* would be decided the same way today in light of *Sprint*'s holding regarding the reach of *Middlesex*. The dissent in *Schall* cautioned that the majority's reasoning on *Younger* abstention could "be used to support abstention almost any time related suits are pending in state and federal courts." *Schall*, 885 F.2d at 114 (Sloviter, J., dissenting). These concerns appear to have been vindicated by *Sprint*. In light of *Sprint*'s holding, the Court does not find *Schall* applicable here.

*Rauso v. Fein*, No. 13-cv-693, 2015 WL 2217411 (E.D. Pa. May 12, 2015), however, postdates *Sprint* and is factually analogous to this case. As here, *Rauso* involved a parallel state fore-

closure suit. The plaintiff sued in federal court to—among other things—enjoin the court in the state case. After applying *Middlesex*'s factors, the district court held that *Younger* abstention was appropriate for some of plaintiff's claims, including his quiet-title claim. *Rauso*, 2015 WL 2217411, at *7-8. *Rauso* thus appears to support Jeffrey's argument that *Younger* abstention is warranted in this case.

But the *Rauso* court's analysis omits any discussion of *Sprint*. *See* 2015 WL 2217411. And in its application of *Middlesex* the *Rauso* court failed to consider whether the state case was quasi-criminal in nature. *Rauso* thus runs afoul of exactly what *Sprint* cautioned against. The Third Circuit has in dictum recognized this failure to apply *Sprint* in another case where *Younger* abstention was held appropriate on a state foreclosure suit. *See Crimone v. Nationstar Mortg., LLC*, 634 F. App'x 375, 377 (3d Cir. 2016) ("We note that the Magistrate Judge, in analyzing the issue of abstention, applied law pre-dating *Sprint*."). This Court therefore declines to follow *Rauso*.

The case Wells Fargo brought in state court has no quasi-criminal context. It is a foreclosure action between private parties. Without additional facts not presented here, *Middlesex* has no application in this case. For this reason, and because Wells Fargo's state case does not fall within any of the other categories of cases that trigger *Younger*, abstention is inappropriate.

### B. Pennsylvania Rule of Civil Procedure 1062

Jeffrey's remaining argument is that this Court should abstain from exercising jurisdiction over this case on the basis of Pennsylvania Rule of Civil Procedure 1062. Rule 1062 provides that actions to quiet title "may be brought in and only in a county in which the land or a part of the land is located." This rule, Jeffrey reasons, requires that Wells Fargo litigate this case

-13-

in the Bedford County Court of Common Pleas because that is the county in which the land underlying this dispute is located.

But Rule 1062 is likewise inapplicable in this case. It is a state rule governing venue, and such rules are supplanted in federal cases by the federal-venue statute codified at 28 U.S.C. § 1391. Under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), and its progeny, federal courts in diversity cases apply state substantive law but federal procedural law. And—as Wells Fargo correctly points out—"[q]uestions of venue . . . are essentially procedural, rather than substantive, in nature." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995) (quoting *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1991)); *see also McCoy v. Siler*, 205 F.2d 498, 499 (3d Cir. 1953) ("A state cannot by legislation modify or repeal a Congressional statute on the venue of federal courts." (footnote omitted)); *Stuart v. Al Johnson Constr. Co.*, 236 F. Supp. 126, 128 (W.D. Pa. 1964) ("[T]he Pennsylvania Rules of Civil Procedure relating to venue are inapplicable insofar as they conflict with § 1391.")

Pennsylvania Rule of Civil Procedure 1062 therefore has no application here. Venue in this case is governed by 28 U.S.C. § 1391. And under § 1391(b)(2), venue is proper in this district because "a substantial part of property that is the subject of the action is situated" in this district.

## V. Conclusion

Jeffrey's motion to dismiss (ECF No. 26) is **DENIED**. A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| WELLS FARGO BANK, N.A., | ) | Case No. 3:16-cv-130 |
|---|---|---|
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| JEFFREY A. CARNELL, ANNA M. CARNELL, RYAN P. JAY, and LARRY E. JAY, | ) | |
| Defendants. | ) | |

### ORDER

NOW, this 25th day of April 2017, upon consideration of Jeffrey A. Carnell's motion to dismiss (ECF No. 26) and for the reasons in the memorandum opinion accompanying this order, it is **HEREBY ORDERED** that Jeffrey Carnell's motion to dismiss is **DENIED**. Thus, pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), Jeffrey Carnell shall file an answer **on or before May 9, 2017**.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE