IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| WELLS FARGO BANK, N.A., | ) | Case No. 3:16-cv-130 |
|---|---|---|
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| JEFFREY A. CARNELL, ANNA M. CARNELL, RYAN P. JAY, and LARRY E. JAY, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

I. Introduction

Presently pending before the Court is the Motion for Summary Judgment (ECF No. 23) filed by Defendants Ryan P. Jay and Larry E. Jay (collectively "the Jays"). This Motion has been fully briefed (*see* ECF Nos. 24, 25, 29, 30, 33, 34) and is ripe for disposition.

This case arises from Wells Fargo Bank, N.A.'s ("Wells Fargo") claims against two mortgagors, Jeffrey A. Carnell and Anna M. Carnell (collectively "the Carnells"), and the two notary publics who notarized the underlying mortgage documents, the Jays. Wells Fargo, primarily seeking quiet title to the property underlying the mortgage, alleges that the Carnells defaulted on their mortgage payments. Most relevant for the purposes of the Jays' Motion for Summary Judgment, Wells Fargo, in apparent recognition of the Carnells' assertions that Anna M. Carnell signed Jeffrey A. Carnell's name on the mortgage documents, alternatively asserts claims for fraud and negligent misrepresentation against the Jays. In the instant Motion, the Jays

ask this Court to dismiss those claims pursuant to Federal Rule of Civil Procedure 56(a) as barred by the statute of limitations.

For the reasons that follow, the Jays' Motion for Summary Judgment (ECF No. 23) is **GRANTED.**

## II. Jurisdiction and Venue

Under 28 U.S.C. § 1332(a)(1), district courts have original jurisdiction over cases between citizens of different states if the amount in controversy exceeds $75,000. For diversity purposes, a national banking association—like Wells Fargo—is considered a citizen of "the State designated in its articles of association as its main office." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006); *see also* 28 U.S.C. § 1348.

Wells Fargo's main office is located in South Carolina and Defendants are domiciled in Pennsylvania. (ECF No. 1 ¶¶ 1-5; ECF No. 39 ¶¶ 1-5.) Further, the value of the mortgage underlying this dispute exceeds $75,000. (ECF No. 1 ¶ 24; ECF No. 39 ¶ 24.) This Court, therefore, has original jurisdiction under 28 U.S.C. § 1332(a)(1).

Venue is proper in this district under 28 U.S.C. § 1391 because the property in question is in the Western District of Pennsylvania and at least one defendant resides in the Western District of Pennsylvania. (ECF No. 25 ¶ 3; ECF No. 29 ¶ 3.)

## III. Relevant Procedural and Factual History[1]

The following facts are undisputed unless otherwise noted.[2]

---

[1] This Memorandum Opinion combines the procedural and factual history into a single section because the procedural history is particularly pertinent to the disposition of the present Motion for Summary Judgment. (ECF No. 23.)

[2] The Court derives these facts from a combination of the exhibits attached to the Jays' Motion for Summary Judgment (ECF No. 23-1), the Jays' Concise Statement of Material Facts (ECF No. 25), Wells Fargo's

On June 19, 2008, Larry E. Jay notarized the signatures of the Carnells on a mortgage in favor of Wells Fargo on real property identified as 4139 Elk Lick Road, Everett, PA 15537 ("the Property"). (ECF No. 23-1, Ex. 1 at 3-6.) This 2008 mortgage was recorded with the Bedford County Recorder of Deeds on July 9, 2008. (*Id.*) On March 19, 2009, Ryan P. Jay notarized the signatures of the Carnells on a mortgage in favor of Wells Fargo on the Property. (ECF No. 23-1, Ex. 4 at 12-15.) This 2009 mortgage was recorded with the Bedford County Recorder of Deeds on April 7, 2009. (*Id.*)

On March 14, 2012, Wells Fargo filed an action in the Bedford County Court of Common Pleas ("Foreclosure Action") to foreclose on the 2009 mortgage. (ECF No. 23-1, Ex. 7 at 21-24.) On May 29, 2012, Jeffrey A. Carnell filed and served an answer and new matter in the Foreclosure Action in which he denied that he signed either of the Wells Fargo mortgages in 2008 or 2009 and averred that the notary public "acted negligently, recklessly[,] and/or willfully in affixing his signature and seal to the subject debt instrument (mortgage), when he knew or should have known that [Jeffrey A. Carnell] did not appear before [the notary public] and sign the subject document." (ECF No. 23-1, Ex. 8 at 25-29; ECF No. 23-1, EX. 8 ¶ 13.) Wells Fargo served Preliminary Objections in the Foreclosure Action on April 18, 2013, to which Jeffrey A. Carnell's answer to the Foreclosure Action was attached. (ECF No. 23-1, Ex. 11 at 38-46.)

In the Foreclosure Action, Wells Fargo served Larry E. Jay with a subpoena, dated April 7, 2014, to obtain documents from him, including his notarial log book entry relative to the 2008 mortgage. (ECF No. 29-1, Ex. A at 3-8.) Wells Fargo served a similar subpoena, also dated April

---

Response to Movant's Concise Statement of Undisputed Material Facts and exhibits thereto (ECF Nos. 29, 29-1), and the Jays' Answer to Plaintiff's New Matter Response to Concise Statement of Material Facts. (ECF No. 34.)

7, 2014, on Ryan P. Jay to obtain documents from him, including his notarial log book entry relative to the 2009 mortgage. (ECF No. 29-1, Ex. B. at 10-14.) In response to both of these subpoenas, the Jays produced their notarial log books, which list the Carnells as both being parties to the two mortgages. (ECF No. 23-1, Ex. 3 at 10-11; ECF No. 23-1, Ex. 6 at 19-20.)

Also in the Foreclosure Action, Wells Fargo propounded requests for admissions upon Anna M. Carnell on May 14, 2014. (ECF No. 29-1, Ex. C at 15-21.) In response, Anna M. Carnell stated that she had signed Jeffrey A. Carnell's name to both the 2008 and the 2009 mortgages. (ECF No. 29-1, Ex. D at 22-29.) Anna Carnell's response to Wells Fargo's requests for admissions were served upon Wells Fargo on June 13, 2014. (*Id.* at 23.)

Wells Fargo filed its Complaint for the instant action with this Court on June 10, 2016. (ECF No. 1.) Wells Fargo's Complaint is organized into ten counts, four of which are made against the Jays. Specifically, the Complaint includes: (1) a claim for fraud against Anna M. Carnell and Ryan P. Jay in Count VII, (2) a claim for fraud against Anna M. Carnell and Larry E. Jay in Count VIII, (3) a claim for negligent misrepresentation against Anna M. Carnell and Ryan P. Jay in Count IX, and (4) a claim for negligent misrepresentation against Anna M. Carnell and Larry P. Jay in Count X. (*Id.* at 16-20.)

On November 9, 2016, the Jays filed the present Motion for Summary Judgment, brief in support thereof, and Concise Statement of Material Facts. (ECF Nos. 23, 24, 25.) Wells Fargo opposed and responded to the Jays' Motion for Summary Judgment and Concise Statement of Material Facts on December 9, 2016. (ECF Nos. 29, 30.) Lastly, the Jays filed a reply brief and response to Wells Fargo's additional material facts on December 21, 2016. (ECF Nos. 33, 34.)

## IV. Legal Standard

"Summary judgment is appropriate only where . . . there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than

a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).

V. Discussion

The Jays argue that Wells Fargo's claims against them should be dismissed because Wells Fargo failed to file its claims against the Jays within the applicable statute of limitations. Wells Fargo offers three counterarguments: (1) the claims against the Jays have not yet accrued; (2) even if these claims have accrued, the discovery rule tolls the statute of limitations; and (3) even if these claims have accrued, the doctrine of fraudulent concealment tolls the statute of limitations. The Court agrees with the Jays that Wells Fargo's claims against them are time barred and is not persuaded by any of Wells Fargo's counterarguments. The Court will address the Jays' initial argument and Wells Fargo's three counterarguments in turn.

A. Wells Fargo's Claims Against the Jays Are Timed Barred

The statute of limitations is "substantive" for the purposes of the *Erie* Doctrine. *See Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 109 (1945). Thus, the period of time provided by Pennsylvania law for filing fraud and negligent misrepresentation actions applies in this case. *See Lafferty v. St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007) ("[A] federal court must apply substantive laws of its forum state in diversity actions . . . and these include state statutes of limitations."). Under Pennsylvania law, claims for fraud and negligent misrepresentation are subject to two-

year statutes of limitations. 42 Pa. Stat. and Cons. Stat. Ann. § 5524(7) (stating, in pertinent part, "the following actions and proceedings must be commenced within two years: . . . any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud.").

Moreover, pursuant to the Pennsylvania Judicial Code, this two-year limitations period is computed from the time the cause of action accrued. 42 Pa. Stat. and Cons. Stat. Ann. § 5502(a). In Pennsylvania, a cause of action accrues when the plaintiff could have first maintained the action. *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005) (citing *Kapil v. Ass'n of Pa. State Coll. & Univ. Faculties*, 470 A.2d 482, 485 (Pa. 1983)). Thus, the Pennsylvania Supreme Court has held that the statute of limitations "begins to run as soon as the right to institute and maintain a suit arises." *Fine*, 870 A.2d at 857 (citing *Pocono Int'l Raceway Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983)). Mistake, misunderstanding, or lack of knowledge in themselves do not toll the running of the statute of limitations. *Id.* (citing *Nesbitt v. Erie Coach Co.*, 204 A.2d 473, 475 (Pa. 1964)). "Once a cause of action has accrued and the prescribed statutory period has run, an injured party is barred from bringing his [or her] cause of action." *Id.*

In the present case, it is undisputed that (1) the two mortgages in question were notarized on June 19, 2008 and March 19, 2009 respectively; (2) Wells Fargo had suffered financial damages on or before March 14, 2012, when it filed the state Foreclosure Action; (3) Jeffrey A. Carnell filed and served an answer and new matter in the Foreclosure Action on May 29, 2012 in which he denied that he signed either the 2008 mortgage or the 2009 mortgage and stated that the Jays acted negligently, recklessly, or willfully in notarizing his signature when he did not appear before

them or sign his name; (4) Wells Fargo attached Jeffrey A. Carnell's answer in the Foreclosure Action to its Preliminary Objections in the Foreclosure Action, which were served on April 18, 2013; and (5) Wells Fargo filed the instant action with this Court on June 10, 2016. *See supra* Part III.

Therefore, unless the statute of limitations is tolled or otherwise did not accrue, *see infra* Parts V.B-D, Wells Fargo clearly should have been aware of the Jays' alleged wrongdoing in regard to the notarization of the 2008 and 2009 mortgages on May 29, 2012 due to the content of Jeffrey A. Carnell's answer in the Foreclosure Action. Wells Fargo even attached Jeffrey A. Carnell's answer to its own Preliminary Objections to the Foreclosure Action, further establishing Wells Fargo's constructive and, likely, actual knowledge of the Jays' allegedly fraudulent and negligent conduct. As over four years elapsed between the filing and service of Jeffrey A. Carnell's answer in the Foreclosure Action on May 29, 2012 and the filing of Wells Fargo's Complaint with this Court on June 10, 2016, the applicable two-year statute of limitations for Wells Fargo's fraud and negligent misrepresentation claims against the Jays has clearly passed. Even were this Court to deem the statute of limitations to begin running only when Wells Fargo attached Jeffrey A. Carnell's answer in the Foreclosure Action to its own Preliminary Objections, Wells Fargo's claims against the Jays would still be time barred because more than three years passed between April 18, 2013, when Wells Fargo's Preliminary Objections were served, and June 10, 2016, when Wells Fargo filed the instant action with this Court.

### B. Wells Fargo's Claims Against the Jays Accrued On or Before May 29, 2012

Wells Fargo first argues that the statute of limitations for its claims against the Jays has yet to even *begin* to run. (*See* ECF No. 30 at 4-6.) Wells Fargo contends that, "unless and until this

-8-

Court impugns the validity of the 2009 Wells Fargo Mortgage—a notarized document recorded in the land records of Bedford County—Plaintiff will not suffer any injury, and its tort claims against the Jays will not accrue." (*Id.* at 4.) Wells Fargo, thus, concludes that, "[b]ecause a limitations period cannot begin to run (much less expire) until a claim accrues, the Court should deny the Jays' motion." (*Id.* at 4-5.) The Court cannot accept Wells Fargo's argument.

As an initial consideration, the Court observes the weighty consequence that would flow from embracing Wells Fargo's position of non-accrual. The logical conclusion of Wells Fargo's argument is that, if this Court renders unfavorable rulings to Wells Fargo on the first six counts of the Complaint, then the Court's disposition of those six claims triggers the statute of limitations for those claims alleged in Count VII, Count VIII, Count IX, and Count X. If accepted, Wells Fargo's non-accrual argument would require courts to conclude that the statute of limitations for *all* claims brought in the alternative does not accrue until after the "primary" claims are unsuccessful. This conclusion is untenable and not supported by any authority.

Furthermore, Pennsylvania law on the accrual of causes of action contradicts Wells Fargo's position that its claims against the Jays do not accrue until and unless it is unsuccessful with the first six counts of its Complaint. Specifically, as discussed *supra* Part V.A, under Pennsylvania law, a cause of action accrues when the plaintiff could have first maintained the action. *Fine*, 870 A.2d at 857 (citing *Kapil*, 470 A.2d at 485). The statute of limitations "begins to run as soon as the right to institute and maintain a suit arises." *Fine*, 870 A.2d at 857 (citing *Pocono*, 468 A.2d at 471). As concluded *supra* Part V.A, this Court holds that Wells Fargo could have first maintained its cause of action upon the information garnered from Jeffrey A. Carnell's answer in the state Foreclosure Action.

Additionally, this Court observes the direct contradiction between Wells Fargo's position of non-accrual and the inclusion of its claims against the Jays in its Complaint filed before this Court on June 10, 2016. Again, a cause of action accrues when the plaintiff could have first maintained the action. *Fine*, 870 A.2d at 857 (citing *Kapil*, 470 A.2d at 485). If Wells Fargo's claims against the Jays have still not accrued, then, inherently, Wells Fargo could not have properly maintained its present claims against the Jays, even in the alternative.

In sum, this Court rejects Wells Fargo's non-accrual argument because of the untenable consequence of accepting Wells Fargo's position and because Wells Fargo's claims against the Jays accrued on or before May 29, 2012 when Wells Fargo knew or should have known of Jeffrey A. Carnell's assertion that he was not present for the signing and notarization of the mortgages in 2008 and 2009.[3]

### C. The Discovery Rule Does Not Toll the Statute of Limitations Because Wells Fargo Failed to Exercise Reasonable Diligence

Wells Fargo next argues that, even if its causes of action against the Jays have accrued, the filing period provided for by the applicable statute of limitations is tolled under the discovery rule. (ECF No. 30 at 7-8.) This Court disagrees with both Wells Fargo's articulation and application of the discovery rule under Pennsylvania law.

---

[3] The Court notes that Wells Fargo cites *Dimensional Music Publ'g, LLC v Kersey*, 448 F. Supp. 2d 643 (E.D. Pa. 2006) in support of its non-accrual argument. This case is easily distinguishable from the present matter. *Dimensional Music* featured an issue regarding the ripeness of a legal malpractice claim when the damages suffered as a result of the alleged malpractice was not yet resolved due to the pending nature of the underlying dispute. *See id.* The Eastern District of Pennsylvania did not decide any issues regarding when or if the statute of limitations began to run in *Dimensional Music*. *See id.* In fact, the only mention of the statute of limitations in *Dimensional Music*—i.e., dicta in a footnote which contemplates whether the statute of limitations would expire if plaintiff's claim is dismissed as unripe—actually runs counter to Wells Fargo's position and appears to favor the accrual of a statute of limitations upon the injury itself. *See id.* at 653 n.23.

As the United States Court of Appeals for the Third Circuit has observed, "[o]ver the years, Pennsylvania courts have developed certain tolling principles to 'ameliorate the sometimes-harsh effects' of the statute of limitations." *Bohus v. Beloff*, 950 F.2d 919, 924 (3d Cir. 1991) (citations omitted). The discovery rule is one such tolling principle. *See Fine*, 870 A.2d at 857-58; *Meehan v. Archdiocese of Phila.*, 870 A.2d 912, 919 (Pa. Super. Ct. 2005). The Pennsylvania Supreme Court has explained:

> The purpose of the discovery rule has been to exclude from the running of the statute of limitations that period of time during which a party who has not suffered an immediately ascertainable injury is reasonable unaware he has been injured, so that he has essentially the same rights as those who have suffered such an injury.

*Fine*, 870 A.2d at 858 (citing *Hayward v. Med. Ctr. of Beaver Cty.*, 608 A.2d 1040, 1043 (Pa. 1992)).

Under Pennsylvania's articulation of the discovery rule, the statute of limitations begins to run as soon as "the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that this injury has been caused by another party's conduct." *Bohus*, 950 F.2d at 924 (quoting *Cathcart v. Keene Indus. Insulation*, 471 A.2d 493, 500 (Pa. Super. Ct. 1984) (en banc)). The "polestar" of the discovery rule is not the plaintiff's *actual* knowledge, but rather "whether the knowledge was known, or through the exercise of diligence, knowable to [the] plaintiff." *Id.* at 925 (quoting *O'Brien v. Eli Lilly & Co.*, 668 F.2d 704, 711 (3d Cir. 1981)); *see Pocono*, 468 A.2d at 471. All plaintiffs have a duty to exercise "reasonable diligence" in ascertaining the existence of their injury and its cause. *Bohus*, 950 F.2d at 925. Although "'[t]here are very few facts which [reasonable] diligence cannot discover, . . . there must be some reason to awaken inquiry and direct diligence in

-11-

the channel in which it would be successful.'" *Id.* (quoting *Vernau v. Vic's Market, Inc.*, 896 F.2d 43, 46 (3d Cir. 1990)).

Put another way, "[t]he question in any given case is not, what did the plaintiff know of the injury done him? [B]ut, what might he have known by the use of means of information within his reach, with the vigilance the law requires of him." *Fine*, 870 A.2d at 858 (quoting *Scranton Gas & Water Co. v. Lackawanna Iron & Coal Co.*, 31 A. 484, 485 (Pa. 1895)). The evaluation of "reasonable diligence" is an objective test, and it considers "the capacity [of plaintiffs] to meet certain situations and the circumstances confronting them at the time in question." *Id.* (quoting *Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (Pa. 2000)). Under the "reasonable diligence" test, a party's actions are evaluated to determine whether he or she exhibited "those qualities of attention, knowledge, intelligence[,] and judgment which society requires of its members for the protection of their own interest and the interest of others." *Id.* (quoting *Crouse*, 745 A.3d at 611). The statute of limitations begins to run as soon as the plaintiff has discovered or, exercising reasonable diligence, should have discovered the injury and its cause. *Id.* (citing *Stauffer v. Ebersole*, 560 A.2d 816, 817 (Pa. Super. Ct. 1989)).

Here, the discovery rule does not apply and does not toll the statute of limitations because Wells Fargo failed to act with reasonable diligence to ascertain its injury and its cause. The undisputed facts before this Court show that Wells Fargo should have been aware of the Jays' alleged wrongdoing on or before May 29, 2012 when they were served with Jeffrey A. Carnell's answer to the state Foreclosure Action. However, based on the record before this Court for the purposes of deciding the Jays' Motion for Summary

Judgment, Wells Fargo failed to take *any* action to investigate Jeffrey A. Carnell's claims until it served subpoenas on the Jays.

Nothing before this Court indicates when these subpoenas were served or when responses to these subpoenas were returned to Wells Fargo. Notably, Wells Fargo's brief, despite the meticulous inclusion of all other significant dates, conveniently excludes any and all dates associated with the issuance or service of the subpoenas. However, the subpoenas—attached as exhibits Wells Fargo's Response—are both clearly dated April 7, 2014. (ECF No. 29-1, Ex. A at 3-8; ECF No. 29-1, Ex. B at 10-14.)

While seeking information from the Jays via subpoena in the Foreclosure Action may likely be a reasonable method to investigate Wells Fargo's claims against the Jays, Wells Fargo's undisputed delay in obtaining and serving these subpoenas does not constitute due diligence. Wells Fargo waited one year, ten months, and nine days after the filing and service of Jeffrey A. Carnell's answer in the Foreclosure Action before seeking subpoenas regarding the Jays' alleged misconduct. This 22-month delay does not even account for any further delay in serving these subpoenas or in awaiting the receipt of the responses to the subpoenas. In essence, based on the undisputed material facts presented to this Court, Wells Fargo's *only* investigation of the Jays' alleged wrongdoing was seeking two subpoenas that were issued less than two months before the passage of the relevant statute of limitations. Such a dearth of inquiry—delayed by over 22 months and despite the substantial investigative avenues available in the state Foreclosure Action and any avenues otherwise available to Wells Fargo—scarcely constitutes reasonable diligence under the circumstances.

Wells Fargo should have known about its alleged injury and the Jays' alleged role in causing that injury on or before May 29, 2012. In other words, Jeffrey A. Carnell's answer in the Foreclosure Action was "some reason to awaken inquiry" in Wells Fargo that the Jays had caused it injury. *Bohus*, 950 F.2d at 925 (quoting *Vernua*, 896 F.2d at 46). Nevertheless, Wells Fargo failed to "direct diligence in the channel in which it would be successful." *Id.* (quoting *Vernua*, 896 F.2d at 46).

Based on the undisputed material factors presented to this Court, the Court concludes that Wells Fargo failed to exercise the reasonable diligence required to trigger the discovery rule and to toll the statute of limitations under Pennsylvania law. Wells Fargo failed to investigate the Jays' wrongdoing for over 22 months after learning of Jeffrey Carnell's accusations and, thus, Wells Fargo failed to satisfy its duty to exercise reasonable diligence in ascertaining the existence of its injury and its cause. *See Bohus*, 950 F.2d at 925. Wells Fargo failed to exhibit "those qualities of attention, knowledge, intelligence[,] and judgment" expected by Pennsylvania law to protect its own interests. *Id.* (citing *Crouse*, 745 A.3d at 611).

As a consequence of this failure to exercise reasonable diligence in ascertaining its injury and its cause, the statute of limitations began to run on May 29, 2012 and was not tolled by the discovery rule. *See id.* (citing *Stauffer*, 506 A.2d at 817).

### D. The Doctrine of Fraudulent Concealment Does Not Toll the Statute of Limitations Because the Purported Fraudulent Act Was Not an Independent Act of Concealment and Wells Fargo Failed to Exercise Reasonable Diligence

Lastly, Wells Fargo contends that, separately from its non-accrual and discovery rule arguments, the statute of limitations is tolled by the doctrine of fraudulent concealment. (ECF

No. 30 at 8-9.) As with the discovery rule, the Court disagrees with both Wells Fargo's articulation and application of the doctrine of fraudulent concealment under Pennsylvania law.

The doctrine of fraudulent concealment is an estoppel-based corollary of the discovery rule. *See Bohus*, 950 F.2d at 925; *Fine*, 870 A.2d at 860-61. The doctrine of fraudulent concealment tolls the statute of limitations where "through fraud or concealment the defendant causes the plaintiff to relax his vigilance or deviate from the right of inquiry." *Bohus*, 950 F.2d at 925 (quoting *Ciccarelli v. Carey Can. Mines, Ltd.*, 757 F.2d 548, 556 (3d Cir. 1985)). Fraudulent concealment may be intentional or unintentional, but "mere mistake, misunderstanding, or lack of knowledge is insufficient." *Id.* (citing *Nesbitt v. Erie Coach Co.*, 204 A.2d 473, 475 (Pa. 1964)); *see also Fine*, 870 A.2d at 860 (citing *Deemer v. Weaver*, 187 A. 215, 215 (Pa. 1936)) ("The doctrine does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an unintentional deception.").

The doctrine of fraudulent concealment requires an affirmative and *independent* act of concealment that would divert or mislead the plaintiff from discovering the injury. *Bohus*, 950 F.2d at 925. (citing *Gee v. CBS, Inc.*, 471 F. Supp. 600, 623 (E.D. Pa. 1979)) (emphasis added). Lastly, the plaintiff bears the burden of proving fraudulent concealment by "clear, precise[,] and convincing" evidence. *Id.* (quoting *Molineux v. Reed*, 532 A.2d 792, 794 (Pa. 1987)).

Here, Wells Fargo has failed to meet this burden because it failed to show that the Jays' notarial logs, presented over 22 months after Jeffrey A. Carnell's accusations, were an (1) *independent* act or (2) an act that diverted or misled Wells Fargo from discovering its injury or the Jays' alleged role in causing that injury.

First, assuming that the Jays' notarial logs were fraudulent, nothing before this Court suggests that the fraudulent completion of the notarial logs was independent from the alleged fraud in notarizing the mortgages. Rather, it would be expected that any fraud associated with the notarization of the mortgages and the logs were part of the same underlying fraudulent activity—not independent of each other.

Second, Wells Fargo has not met its burden to show that, even were the notarial logs an independent act of fraud, that the presentation of these logs at an unknown time at least 22 months after Jeffrey A. Carnell filed his answer in the Foreclosure Action diverted or misled Wells Fargo from discovering the Jays' alleged misconduct. To the contrary, it is undisputed that Wells Fargo performed at least one additional and subsequent effort to discover the Jays' alleged misconduct by propounding requests for admissions on Anna M. Carnell on May 14, 2014. (*See* ECF No. 29-1, Ex. C at 15-21). Moreover, given the nature of the Jays' alleged misconduct, the presence of Jeffrey A. Carnell's name on the notarial logs would be expected, i.e., were the Jays to participate in wrongdoing involving the forgery or misrepresentation of Jeffrey A. Carnell's signature and approval of two mortgages, the Jays would likely not simply fraudulently or negligently notarize Jeffrey A. Carnell's signature despite Jeffrey A. Carnell not being present, they would also fraudulently include Jeffrey Carnell's name on their notarial log.

In addition to the lack of an independent fraudulent act or proof of being misled, the doctrine of fraudulent concealment also does not apply in the instant matter because of Wells Fargo's aforementioned failure to investigate its potential causes of action against the Jays with reasonable diligence. *See supra* Part III.C.

"[T]he Supreme Court [of Pennsylvania] views tolling the statute of limitations in terms of the 'knew or should have known' standard whether the statute is tolled because of the discovery rule *or* because of fraudulent concealment." *Bohus*, 950 F.2d at 926 (quoting *Vernau*, 896 F.2d at 46) (emphasis in original). In other words, as the Third Circuit explained, "the inquiry under the fraudulent concealment doctrine is the same as that under the discovery rule." *Id.*; *see Fine*, 870 A.2d at 861 (citing *Pocono*, 468 A.2d at 471) ("We are of the view, however, that the standard of reasonable diligence, which is applied to the running of the statute of limitations when tolled under the discovery rule, also should apply when tolling takes place under the doctrine of fraudulent concealment. This is, we believe, the standard that will serve one of the overarching tenets in this area of our jurisprudence—the responsibility of a party who seeks to assert a cause of action against another to be reasonably diligent in informing himself of the facts upon which his recovery may be based.").

Accordingly, Wells Fargo's tolling argument under the fraudulent concealment role likewise fails for those same reasons articulated *supra* Part V.C because Wells Fargo failed to exercise reasonable diligence.

## VI. Conclusion

For the foregoing reasons, the Jays' Motion for Summary Judgment (ECF No. 23) is **GRANTED**.

In sum, Wells Fargo failed to bring its claims against the Jays within the time period provided for by Pennsylvania law and has not met its burden of proving the applicability of the discovery rule or the doctrine of fraudulent concealment by "clear, precise[,] and convincing"

evidence. *See Bohus*, 950 F.2d at 926 (quoting *Molineux*, 532 A.2d at 794). Thus, the passage of the two-year statute of limitations requires the dismissal of Wells Fargo's claims against the Jays.

A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| WELLS FARGO BANK, N.A., | ) | Case No. 3:16-cv-130 |
|---|---|---|
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| JEFFREY A. CARNELL, ANNA M. CARNELL, RYAN P. JAY, and LARRY E. JAY, | ) | |
| Defendants. | ) | |

## ORDER

**NOW**, this 15th day of February 2018, upon consideration of the Motion for Summary Judgment (ECF No. 23) filed by Defendant Ryan P. Jay and Defendant Larry E. Jay, and for the reasons set forth in the Memorandum Opinion accompanying this Order, it is **HEREBY ORDERED** that Defendant Ryan P. Jay and Defendant Larry E. Jay's Motion for Summary Judgment (ECF No. 23) is **GRANTED**.

Accordingly, **IT IS ORDERED** that all claims brought in Plaintiff Wells Fargo Bank, N.A.'s Complaint (ECF No. 1) against Defendant Ryan P. Jay and Defendant Larry E. Jay are **DISMISSED WITH PREJUDICE**.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE