## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WELLS FARGO BANK, N.A.,** | ) | **Case No. 3:16-cv-130** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JEFFREY A. CARNELL and ANNA M.** | ) | |
| **CARNELL,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM OPINION[1]

### I.    Introduction

Presently pending before the Court is the Motion for Summary Judgment (ECF No. 50)

filed by Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo") against Defendants Jeffrey A. Carnell

and Anna M. Carnell (collectively "the Carnells"). This Motion has been fully briefed (*see* ECF

Nos. 51, 52, 54, 55, 56) and is ripe for disposition.

This case arises from Wells Fargo's claims against two mortgagors, Jeffrey Carnell and

Anna Carnell. Wells Fargo seeks, *inter alia,* quiet title and a declaratory judgment regarding the

property underlying the mortgage on the basis that the Carnells defaulted on their mortgage

payments. However, Wells Fargo's claims are complicated by Jeffrey Carnell's assertion that

Anna Carnell impermissibly signed his name on the mortgage documents. In the instant Motion,

Wells Fargo asks this Court to grant summary judgment in its favor because, regardless of

---

[1] The Court has removed Ryan P. Jay and Larry E. Jay from the caption in this case because these former
Defendants were fully terminated from this case in prior Memorandum Opinions and Orders. *See Wells
Fargo Bank, N.A. v. Carnell,* Case No. 16-cv-130, 2018 WL 1882854 (W.D. Pa. April 19, 2018); *Wells Fargo Bank,
N.A. v. Carnell,* Case No. 16-cv-130, 2018 WL 988352 (W.D. Pa. Feb. 15, 2018).

whether Jeffrey Carnell's version of the facts are true, Anna Carnell had the authority to enter the mortgage on Jeffrey Carnell's behalf under a power of attorney—despite not remembering that she had such authority until years later, shortly before the instant case was scheduled for mediation.

For the reasons that follow, Wells Fargo's Motion for Summary Judgment (ECF No. 50) is **GRANTED.**

## II. Jurisdiction and Venue

Under 28 U.S.C. § 1332(a)(1), district courts have original jurisdiction over cases between citizens of different states if the amount in controversy exceeds $75,000. For diversity purposes, a national banking association—like Wells Fargo—is considered a citizen of "the State designated in its articles of association as its main office." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006); *see also* 28 U.S.C. § 1348.

Wells Fargo's main office is located in South Carolina and Defendants are domiciled in Pennsylvania. (ECF No. 1 ¶¶ 1-5; ECF No. 39 ¶¶ 1-5.) Further, the value of the mortgage underlying this dispute exceeds $75,000. (ECF No. 1 ¶ 24; ECF No. 39 ¶ 24.) This Court, therefore, has original jurisdiction under 28 U.S.C. § 1332(a)(1).

Venue is proper in this district under 28 U.S.C. § 1391 because the property in question is in the Western District of Pennsylvania and at least one defendant resides in the Western District of Pennsylvania. (ECF No. 25 ¶ 3; ECF No. 29 ¶ 3.)

## III. Relevant Procedural History

Wells Fargo filed its Complaint with this Court on June 10, 2016. (ECF No. 1.) Wells Fargo's Complaint features ten counts: (1) a claim for quiet title against the Carnells in Count I,

(2) a claim for declaratory judgment against the Carnells in Count II, (3) claims for an equitable lien or equitable mortgage against the Carnells in Count III, (4) additional claims for an equitable lien or equitable mortgage against the Carnells in Count IV, (5) a claim for breach of contract against Anna Carnell in Count V, (6) a second claim for breach of contract against Anna Carnell in Count VI, (7) a claim for fraud against Anna M. Carnell and Ryan P. Jay in Count VII, (8) a claim for fraud against Anna M. Carnell and Larry E. Jay in Count VIII, (9) a claim for negligent misrepresentation against Anna M. Carnell and Ryan P. Jay in Count IX, and (10) a claim for negligent misrepresentation against Anna M. Carnell and Larry P. Jay in Count X. (*Id.* at 16-20.)

However, in granting the Motion for Summary Judgment (ECF No. 23) filed by Ryan P. Jay and Larry E. Jay (collectively "the Jays"), this Court dismissed all claims against the Jays with prejudice because Wells Fargo failed to bring its claims against the Jays within the applicable statute of limitations. *See Wells Fargo Bank, N.A. v. Carnell*, Case No. 16-cv-130, 2018 WL 988352, at *8 (W.D. Pa. Feb. 15, 2018). This Court also dismissed all crossclaims brought by Jeffrey Carnell against the Jays, fully terminating the Jays from the instant case. *Wells Fargo Bank, N.A. v. Carnell*, Case No. 16-cv-130, 2018 WL 1882854 (W.D. Pa. April 19, 2018).

On April 12, 2018, Wells Fargo filed the present Motion for Summary Judgment, Concise Statement of Material Facts, and Brief in Support thereof. (ECF Nos. 50, 51, 52.) Jeffrey Carnell opposed this Motion by filing his Response to Movant's Concise Statement of Undisputed Material Facts and Brief in Opposition on May 4, 2018. (ECF Nos. 54, 55.) Anna Carnell, pro se, has not filed any response. Lastly, Wells Fargo filed its Reply Brief on May 18, 2018. (ECF No. 56.)

-3-

## IV. Relevant Factual History

The following facts are undisputed unless otherwise noted.[2]

Jeffrey Carnell and Anna Carnell were married on two separate occasions—the latter of which occurred on August 21, 1999. (ECF No. 51 ¶¶ 9-10; ECF No. 54 ¶¶ 9-10.) The Carnell's second marriage ended in divorce in 2013. (ECF No. 51 ¶ 52.)[3]

On May 9, 2003, Jeffrey Carnell executed a durable power of attorney appointing Anna Carnell as his agent/attorney-in-fact.[4] (ECF No. 51 ¶ 11; ECF No. 51-3; ECF No. 54 ¶ 11.) However, Anna Carnell only remembered that she had this power of attorney "right before the mediation" in the present litigation. (ECF No. 54 ¶ 11; ECF No. 54-1 at 132: 14-17.) This power of attorney generally authorizes Anna Carnell to act on Jeffrey Carnell's behalf, including an express authorization for Anna Carnell to mortgage property on Jeffrey Carnell's behalf. (ECF No. 51 ¶¶ 14-16; ECF No. 51-3; ECF No. 54 ¶¶ 14-16.) Anna Carnell managed the Carnells' finances from August 21, 1999 until 2010. (ECF No. 51 ¶ 19; ECF No. 54 ¶ 19.)

---

[2] The Court derives these facts from a combination of Wells Fargo's Concise Statement of Material Facts and exhibits thereto (ECF No. 51) and Jeffrey A. Carnell's Response to Movant's Concise Statement of Undisputed Material Facts and exhibits thereto (ECF No. 54).

[3] The Carnells did not respond to paragraph 52 of Wells Fargo's Concise Statement and, thus, the content of paragraph 52 is deemed admitted. *See* LCvR 56(E) (stating that the uncontroverted content of the movant's statement of material facts is deemed admitted and carries conclusive weight for the purposes of summary judgment motions); *see also Wylie v. TransUnion, LLC*, Case No. 3:16-cv-102, 2017 WL 4386404, at *3 (W.D. Pa. Sept. 29, 2017) (citing cases and stating the same principle).

[4] The Court notes that, despite Wells Fargo referring to the person designated by a principal in a power of attorney to act on behalf of that principal with the older term "attorney-in-fact," this Memorandum Opinion will hereinafter use the term "agent" to align with the terminology used in the current Pennsylvania statute and in Jeffrey Carnell's power of attorney. *See* 20 Pa. Stat. and Cons. Stat. Ann. § 5601(f); 20 Pa. Stat. and Cons. Stat. Ann. § 5601, Jt. St. Govt. Comm. Comment—1999, subsection (f); ECF No. 51-3.

Jeffrey Carnell concedes that he never formally revoked his power of attorney, but *believed* that the power of attorney was only to be used if he and Anna Carnell were "on good terms" and he was incapacitated. (ECF No. 51 ¶ 13; ECF No. 54 ¶ 13.)

After the Carnells' second marriage, the Carnells acquired title to real property located at 4139 Elk Lick Road, Everett, Pennsylvania 15537 ("the Property") as "husband and wife" by deed dated October 14, 2005. (ECF No. 51 ¶ 21; ECF No. 54 ¶ 21.)

Pursuant to a promissory note dated September 5, 2005, M&T Mortgage Corporation ("M&T") loaned the Carnells the principal sum of $82,400.00. (ECF No. 51 ¶ 22; ECF No. 54 ¶ 22.) Pursuant to a mortgage dated September 5, 2006 ("the M&T Mortgage"), the Carnells gave a mortgage against the Property in order to secure repayment of the debt to M&T. (ECF No. 51 ¶ 25; ECF No. 54 ¶ 25.) Jeffrey Carnell's signature appears on both the M&T promissory note and the M&T Mortgage; he signed his own name on both of these M&T documents. (ECF No. 51 ¶¶ 23-24, 26-27; ECF No. 54 ¶¶ 23-24, 26-27.)

Pursuant to a promissory note dated June 30, 2008, Wells Fargo loaned the Carnells the principal sum of $101,952.00 to, at least in part, pay off the debt secured by the M&T Mortgage. (ECF No. 51 ¶¶ 28, 36; ECF No. 54 ¶¶ 28, 36.) Pursuant to a mortgage dated June 19, 2008 ("the 2008 Wells Fargo Mortgage"), the Carnells gave a mortgage against the Property to Wells Fargo in order to secure repayment of the 2008 debt to Wells Fargo. (ECF No. 51 ¶ 32; ECF No. 54 ¶ 32.) Jeffrey Carnell's name appears on both the 2008 Wells Fargo loan and the 2008 Wells Fargo Mortgage, but he did not sign them—Anna Carnell signed his name. (ECF No. 51 ¶¶ 29-31, 33-35; ECF No. 54 ¶¶ 29-31, 33-35.)

Pursuant to a promissory note dated March 31, 2009, Wells Fargo loaned the Carnells the principal sum of $156,548.00 to, at least in part, pay off the debt secured by the 2008 Wells Fargo Mortgage. (ECF No. 51 ¶¶ 39, 47; ECF No. 54 ¶¶ 39, 47.) Pursuant to a mortgage dated March 20, 2009 ("the 2009 Wells Fargo Mortgage"), the Carnells gave a mortgage against the Property to Wells Fargo in order to secure the repayment of the 2009 debt to Wells Fargo. (ECF No. 51 ¶ 43; ECF No. 54 ¶ 43.) Jeffrey Carnell's name appears on both the 2009 Wells Fargo loan and the 2009 Wells Fargo Mortgage, but he did not sign them—Anna Carnell signed his name. (ECF No. 51 ¶¶ 40-42, 44-46; ECF No. 54 ¶¶ 40-42, 44-46.)

On March 14, 2012, Wells Fargo filed an action in the Bedford County Court of Common Pleas to foreclose on the lien of the 2009 Wells Fargo Mortgage against the Property ("Foreclosure Action"). (ECF No. 51 ¶ 50; ECF No. 54 ¶ 50.) In this Foreclosure Action, Jeffrey Carnell filed an answer and new matter on May 29, 2012, stating that the M&T Mortgage was "legitimate," but asserting that he did not execute the 2008 Wells Fargo Mortgage or the 2009 Wells Fargo Mortgage. (ECF No. 51 ¶ 51; ECF No. 54 ¶ 51.) However, the Foreclosure Action has purportedly been discontinued effective March 16, 2018 due to the substitution of Specialized Loan Servicing, LLC as a party plaintiff for Wells Fargo. (ECF No. 54 ¶ 51 n.16.)

## V. Legal Standard

"Summary judgment is appropriate only where . . . there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh,* 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.,* 500 F.3d 375, 380 n.6 (3d Cir. 2007)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).

## VI. Discussion

Wells Fargo argues that it is entitled to summary judgment based on two theories: (1) Anna Carnell had the express actual authority to enter into the Wells Fargo mortgages on Jeffrey Carnell's behalf under his durable power of attorney and, in the alternative, (2) Jeffrey Carnell is bound to the 2008 Wells Fargo Mortgage and the 2009 Wells Fargo Mortgage pursuant to the so-called "entireties presumption" under Pennsylvania law. (*See* ECF No. 52 at 9-14.) Jeffrey Carnell, in response, argues that a genuine dispute of material fact exists because of four alternative scenarios supportable by the facts, that Pennsylvania's Statute of Frauds bars Wells Fargo's requested relief, and that an equitable lien cannot be imposed. (*See* ECF No. 55.)

The Court will address each of Wells Fargo's arguments and Jeffrey Carnell's counterarguments in turn.

### A. Anna Carnell Acted on Jeffrey Carnell's Behalf with Express Actual Authority Under a Valid Durable Power of Attorney in Signing His Name to the Wells Fargo Mortgages

Despite the unusual factual circumstances of this case, the resolution of Wells Fargo's instant Motion for Summary Judgment is remarkably simple. Jeffrey Carnell executed a valid durable power of attorney on May 9, 2003 that selected Anna Carnell as his agent. *See supra* Part IV. Pursuant to her express actual authority as Jeffrey Carnell's agent, Anna Carnell signed Jeffrey Carnell's name on two Wells Fargo mortgages in 2008 and 2009. *See id.* Jeffrey Carnell never revoked this power of attorney, nor has the validity of this power of attorney been questioned by any party. *See id.* Anna Carnell also signed her own name to both of these Wells Fargo mortgages. *See id.* Therefore, both Anna Carnell and Jeffrey Carnell are bound by the 2008

Wells Fargo Mortgage and the 2009 Wells Fargo Mortgage, and Wells Fargo is entitled to appropriate relief.

However, this brief recitation of the facts and law fails to capture the oddities of this case — oddities which merit further discussion and, hopefully, prompt all of the parties to exercise greater caution and care in their real estate, loan, and mortgage practices.

As a preliminary issue, for the purposes of the instant Motion, the Court accepts as fact that Anna Carnell signed Jeffrey Carnell's name on both Wells Fargo mortgages,[5] and, thus, this Court will first engage in an analysis as to whether Pennsylvania law permits Anna Carnell to act on Jeffrey Carnell's behalf. Under the Pennsylvania common law of agency, an agent has the authority to act on behalf of and bind the principal if certain requirements are satisfied. *See Walton v. Johnson*, 66 A.3d 782, 786 (Pa. Super. Ct. 2013); *James v. Duquesne University*, 936 F. Supp. 2d 618, 641 (W.D. Pa. 2013); *Stout Street Funding LLC v. Johnson*, 873 F. Supp. 2d 632, 641 (E.D. Pa. 2012). Relevant here, "express actual authority" arises "where the principal deliberately and specifically grants authority to the agent as to certain matters." *Walton*, 66 A.3d at 786.

One way in which express actual authority can arise is through a power of attorney. *See* 20 Pa. Stat. and Cons. Stat. Ann. §§ 5601-14; *In re Weidner*, 938 A.2d 354, 359 (Pa. 2007). Pennsylvania statutory law specifically recognizes that a principal may, through a written instrument, delegate to an agent the authority to borrow money and mortgage real property on the principal's behalf. *See* 20 Pa. Stat. and Cons. Stat. Ann. §§ 5601-14.

---

[5] See *infra* Part VI.C for a discussion of why the Court views the facts in this manner.

In the instant case, the summary judgment record indisputably establishes that Jeffrey Carnell validly executed a notarized durable power of attorney that named Anna Carnell as his agent with the express actual authority to borrow money and mortgage property on his behalf. *See supra* Part IV. A power of attorney lasts until revocation through notice to the agent, death of the principal, or the filing of a divorce action by a principal married to his or her agent. *See* 20 Pa. Stat. and Cons. Stat. Ann. §§ 5604, 5605. No evidence presented to this Court suggests that any of these revocatory events transpired.[6] Thus, the undisputed material facts before this Court show that Anna Carnell had the express actual authority to enter into both Wells Fargo mortgages on Jeffrey Carnell's behalf.

Yet, two additional wrinkles merit discussion due to their rarity and oddity. First, Anna Carnell forgot that she was Jeffrey Carnell's agent under his power of attorney until years after she signed his name on the Wells Fargo mortgages. *See supra* Part IV. Second, Anna Carnell did not present the power of attorney instrument when she signed Jeffrey Carnell's name on the two mortgage documents, nor did she sign her own name as agent for Jeffrey Carnell or otherwise indicate that she was signing on Jeffrey Carnell's behalf as his agent. Jeffrey Carnell argues that, because of these purported deficiencies, Anna Carnell acted improperly and could not bind Jeffrey Carnell to the mortgages. (*See* ECF No. 55.)

The Court acknowledges the rhetorical appeal of Jeffrey Carnell's arguments and the oddity of this situation—particularly the peculiarity of accidentally or unknowingly acting under a power of attorney. Moreover, the Court certainly would not advise agents, notaries, or

---

[6] The Carnells' divorced a second time in 2013, years after the second Wells Fargo Mortgage in 2009. *See supra* Part IV.

mortgagees to follow the example of the parties in this case. Nevertheless, neither the parties' nor this Court's own research has uncovered any statute, case, or principle of Pennsylvania law requiring an agent to act with any particular level of *mens rea* or consciousness when acting on behalf of a principal.

Furthermore, although a third-party—such as Wells Fargo—would be wise to require proof that an agent has the requisite authority to act on behalf of a principal, Pennsylvania law does not by default require that an agent provide such proof in order to exercise his or her actual express authority; nor does Pennsylvania law require that an agent use specific words, particular phrases, or formal notations to validly act on the behalf of a principal. *See* 20 Pa. Stat. and Cons. Stat Ann. § 5602(c) (explaining that powers of attorney can, but need not, be filed with the clerk of the orphan's court); *id.* § 5603 (providing rules for the implementation of powers of attorney); *id.* § 5608 (detailing rules regarding acceptance and reliance on powers of attorney without requiring a power of attorney to be presented or displayed for the agent's authority to be valid); *id.* § 5610 (providing that a court may order an agent to file accountings, but that they are not automatically required).

While conventional wisdom would admonish the parties' handling of the execution of the Wells Fargo mortgages, Pennsylvania law requires that powers of attorney be strictly construed. *See In Re Estate of Moskowitz*, 115 A.3d 372, 385 (Pa. Super. Ct. 2015). The power of attorney in the present case explicitly states that Anna Carnell can act on Jeffrey Carnell's behalf "in my name and or in her name." (ECF No. 51-3 at 3.) That is precisely what Anna Carnell did. She signed the 2008 Wells Fargo Mortgage and the 2009 Wells Fargo Mortgage in Jeffrey Carnell's name.

In addition, the parties and this Court have not identified any authority to suggest that an agent must sign his or her own name or disclose any other details in order to bind a principal to a written agreement. To the contrary, the Pennsylvania Supreme Court—albeit over 175 years ago—permitted an agent who signed a principal's name on a deed to bind that principal. *See Devinney v. Reynolds*, 1 Watts & Serg. 328, 1841 WL 4095 (Pa. 1841). The Pennsylvania Supreme Court reasoned:

> It would be useless to add the name and seal of the attorney, for it is what it purports to be, the deed of the principal and not the attorney, and therefore does not require his name or seal, but the name and seal of the principal only.

*Id.* at 332, 1841 WL 4095, at *5.

Despite its age, *Devinney* constitutes binding precedent from the Pennsylvania Supreme Court and, especially given the lack of any authority to the contrary, persuades this Court that Anna Carnell could validly bind Jeffrey Carnell to both Wells Fargo mortgages by signing his name as his agent without any additional notations or explanations. *See Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 231 (3d Cir. 2011) (stating that, when interpreting state law, federal courts must follow the state's highest court); *Hadeed v. Advanced Vascular Resources of Johnstown, LLC*, Case No. 3:15-cv-22, 2017 WL 4998663, at *17 n.26 (W.D. Pa. Oct. 30, 2017) (same).

The main thrust of Jeffrey Carnell's argument is that he "disputes that he ever gave her authority to sign his name to the mortgage loan documents." (ECF No. 55 at 3.) Unfortunately for Jeffrey Carnell, he did—when he named Anna Carnell as his agent in his power of attorney on May 9, 2003. Jeffrey Carnell may not have expected the authority delegated by his power of

-12-

attorney in 2003 to be used to sign his name on mortgage instruments in 2008 and 2009, and Anna Carnell herself may have even forgotten that she held such authority to act on Jeffrey Carnell's behalf. Nonetheless, under Pennsylvania law, Anna Carnell held express actual authority to bind Jeffrey Carnell to the 2008 Wells Fargo Mortgage and the 2009 Wells Fargo Mortgage and, based on the undisputed material facts presented to this Court, that is exactly what she did.

Accordingly, as provided by Pennsylvania's Uniform Durable Power of Attorney Act, the "act performed by an agent [i.e., Anna Carnell] pursuant to a power of attorney has the same effect and inures to the benefit of and binds the principal [i.e., Jeffrey Carnell] and the principal's successors in interest as if the principal had performed the act." 20 Pa. Stat. and Cons. Stat. Ann. § 5601.4(g).

### B. Alternatively, Pennsylvania's "Entireties Presumption" Binds Jeffrey Carnell to the Wells Fargo Mortgages

Independent from Anna Carnell's authority under the power of attorney, Pennsylvania law has recognized a doctrine known as the "entireties presumption" for at least 80 years that provides Wells Fargo with a separate basis for summary judgment. *See Madden v. Gosztonyi Savings & Trust Co.*, 200 A. 624, 630-31 (Pa. 1938); *see also In re Brannon*, 476 F.3d 170, 173 (3d Cir. 2007); *Deutsche Bank Nat'l Trust Co. v. Evans*, 421 B.R. 193, 197 (W.D. Pa. 2009); *Clingerman v. Sadowski*, 519 A.2d 378, 381 (Pa. 1986).

Under Pennsylvania law, "[a] conveyance of either real or personal property to a husband and wife, without more, vests in them an estate by the entireties." *Plastipack Packaging, Inc. v. DePasquale*, 937 A.2d 1106, 1109 (Pa. Super. Ct. 2007). In regard to such a property by the entireties, Pennsylvania law recognizes "'a well-established presumption that during the term of

a marriage either spouse has the power to act for both, without specific authorization, so long as the benefits of such action inure to both.'" *Scott v. BAC Home Loan Servicing, L.P.*, Civil Action No. 13-5540, 2016 WL 320219, at *7 (E.D. Pa. Jan. 27, 2016) (quoting *J.R. Christ Const. Co. v. Olevsky*, 232 A.2d 196, 199 (Pa. 1967)). The entireties presumption "can render a mortgage enforceable even though only one spouse actually executed the mortgage." *Id.; see, e.g., Deutsche Bank*, 421 B.R. at 197.

In the present case, the undisputed facts before this Court reveals that the Carnells were married on August 21, 1999 and took title to the Property as "husband and wife" on October 14, 2005. *See supra* Part IV. Additionally, the evidence before this Court shows that the proceeds of the Wells Fargo mortgages were used to discharge the underlying debt from prior mortgages and loans on the Property and/or deposited in the Carnells' joint bank account. *See id.* Thus, under the entireties presumption, Jeffrey Carnell benefited from these transactions by Anna Carnell and is bound to them.[7]

## C. The Alternative Factual Scenarios Proposed by Jeffrey Carnell Do Not Create A Genuine Dispute of Material Fact

The Court recognizes the unusual circumstances surrounding the execution of the 2008 Wells Fargo Mortgage and the 2009 Wells Fargo Mortgage. As detailed above, *see supra* Part IV, and in prior Memorandum Opinions in this case,[8] the evidence the parties have presented in this case could lead a reasonable jury to believe in multiple factual scenarios.

---

[7] The Court notes that *Herb v. Citimortgage, Inc.*, 955 F. Supp. 2d 441 (M.D. Pa. 2013), to any extent it would be persuasive to this Court, is easily distinguishable from the present case because, unlike in *Herb*, Jeffrey Carnell authorized Anna Carnell to borrow money and mortgage property on his behalf in the power of attorney. *See supra* Part IV.

[8] *See Wells Fargo Bank, N.A. v. Carnell*, Case No. 16-cv-130, 2018 WL 1882854 (W.D. Pa. April 19, 2018); *Wells Fargo Bank, N.A. v. Carnell*, Case No. 16-cv-130, 2018 WL 988352 (W.D. Pa. Feb. 15, 2018); *Wells Fargo Bank,*

Jeffrey Carnell attempts to categorize these multiple scenarios into four alternatives that he argues feature genuine disputes of material fact: (1) Jeffrey Carnell personally signed his name on the Wells Fargo mortgages in front of the notaries; (2) Anna Carnell signed Jeffrey Carnell's name on the Wells Fargo mortgages with his "consent and understanding"; (3) Anna Carnell signed Jeffrey Carnell's name on the Wells Fargo mortgages "using the power of attorney"; or (4) Anna Carnell signed Jeffrey Carnell's name on the Wells Fargo mortgages "without his authority or consent." (*See* ECF No. 55 at 1-2.) However, this Court concludes that these four alternative scenarios are immaterial for the purposes of deciding Wells Fargo's Motion for Summary Judgment.

Jeffrey Carnell's "first alternative" would unmistakably result in the grant of summary judgment against him because, under this "first alternative," Jeffrey Carnell appeared before the notaries and signed both Wells Fargo mortgages himself. The Court acknowledges that a factual dispute exists as to whether Jeffrey Carnell personally signed the Wells Fargo mortgages, but, as Wells Fargo concedes (ECF No. 56 at 1-2), the Court must resolve this factual dispute in favor of Jeffrey Carnell in deciding the instant Motion. *See Farrell*, 206 F.3d at 278 (quoting *Armbruster*, 32 F.3d at 777) (stating that, for the purposes of deciding a motion for summary judgment, "'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'"). Wells Fargo's Concise Statement of Material Facts and Reply Brief both admit that, for the purposes of the instant Motion for Summary Judgment, the Court must view

*N.A. v. Carnell*, Case No. 16-cv-130, 2018 840141 (W.D. Pa. Feb. 12, 2018); *Wells Fargo Bank, N.A. v. Carnell*, Case No. 16-cv-130, 2017 WL 1498087 (W.D. Pa. April 25, 2017).

Anna Carnell as having signed Jeffrey Carnell's name on the Wells Fargo mortgages. (*See* ECF No. 51; ECF No. 56 at 1-2.) Thus, the Court discounts this "first alternative."

The remaining "alternative" scenarios proposed by Jeffrey Carnell all feature Anna Carnell signing Jeffrey Carnell's name on the Wells Fargo mortgages, but allegedly differ as to whether Anna Carnell possessed the requisite authority to sign the mortgages on Jeffrey Carnell's behalf. (*See* ECF No. 55.) However, this Court holds that this putative dispute of fact is not "genuine." *See* Fed. R. Civ. P. 56(a); *Scott v. Harris*, 550 U.S. 372, 380 (2007) (stating that, if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there are no "genuine" disputes of fact); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted.").

As discussed in greater detail *supra* Part VI.A, the summary judgment record establishes, without dispute, that Jeffrey Carnell executed a power of attorney granting Anna Carnell authority to enter mortgages on his behalf and in his name. Therefore, the second, third, and fourth "alternatives" posed by Jeffrey Carnell are, in fact, one and the same. The only material fact in these three latter scenarios is that Anna Carnell possessed a valid power of attorney and, under the authority granted thereunder, signed the Wells Fargo mortgages on behalf of Jeffrey Carnell. Unfortunately for Jeffrey Carnell, Pennsylvania law does not require Jeffrey Carnell to have provided any additional consent beyond the execution of the power of attorney itself to allow Anna Carnell, as his agent, to enter the Wells Fargo mortgages on his behalf. *See supra* Part VI.A. Nor does Pennsylvania law require that Anna Carnell physically presented the power of attorney document or signed the mortgages by signing Jeffrey Carnell's name on the mortgages

in a particular manner or with a specific mark or notation to indicate that she was signing his name as his agent. *See id.*

In essence, under the first "alternative," summary judgment must be granted in favor of Wells Fargo because, in this first scenario, Jeffrey Carnell personally signed the Wells Fargo mortgages. And, under the second, third, and fourth putative "alternatives," summary judgment must be granted in favor of Wells Fargo because, regardless of the factual distinctions that Jeffrey Carnell attempts to create between these latter three "alternatives," Anna Carnell signed the Wells Fargo mortgages with the express actual authority to bind Jeffrey Carnell to those mortgages. Thus, Jeffrey Carnell's "four alternatives" do not provide any genuine dispute of material fact and, consequently, do not persuade this Court that granting summary judgment in favor of Wells Fargo is improper.

## D. Pennsylvania's Statute of Frauds Does Not Bar the Relief Sought by Wells Fargo and, Regardless, Jeffrey Carnell Has Waived This Defense

Jeffrey Carnell next argues that Anna Carnell's execution of the Wells Fargo mortgages on his behalf violates Pennsylvania's Statute of Frauds and that these mortgage instruments are unenforceable against him because he did not sign the documents. (ECF No. 55 at 6.) However, Jeffrey Carnell's argument ignores the plain wording of Pennsylvania's Statute of Frauds. *See* 33 Pa. Stat. and Cons. Stat. Ann. § 1 (providing that the enumerated contracts must be "put in writing, and signed by the parties so making or creating the same, *or their agents*, thereunto lawfully authorized by writing . . . .") (emphasis added).

Here, as discussed throughout this Memorandum Opinion, no parties dispute that Jeffrey Carnell signed and validly executed the durable power of attorney. Therefore, the power of

attorney satisfies the requirements of Pennsylvania's Statute of Frauds because it is a written authorization for Anna Carnell to act as Jeffrey Carnell's agent.

Furthermore, failure to comply with the Statute of Frauds is an enumerated affirmative defense under Federal Rules of Civil Procedure 8(c)(1) that is waived unless pleaded under Rule 8(c) or made in an appropriate motion under Rule 12(b). *See* Fed. R. Civ. P. 8(c)(1); Fed. R. Civ. P 12(b); *see also Moody v. Atlantic City Bd. of Educ.*, 870 F.3d 206, 218 (3d Cir. 2017) (quoting *Sys. Inc. v. Bridge Elecss Co.*, 335 F.2d 465, 466 (3d Cir. 1964)) ("An affirmative defense which is neither pleaded as required by [R]ule 8(c) nor made the subject of an appropriate motion under [R]ule 12(b) is waived.").

In the instant case, Jeffrey Carnell did not plead or otherwise raise the Statute of Frauds affirmative defense in his Motion to Dismiss Wells Fargo's Complaint or in his Answer to Wells Fargo's Complaint. (*See* ECF Nos. 26-28, 39.) Therefore, Jeffrey Carnell has waived this defense. *See Moody*, 870 F.3d at 218.

### E. Wells Fargo's Motion for Summary Judgment Does Not Seek the Imposition of an Equitable Lien

Lastly, Jeffrey Carnell concludes his Brief in Opposition by arguing that the Court cannot impose an equitable lien on the Property because, under Pennsylvania law, the mortgagee—i.e., Wells Fargo—is a "volunteer" that is not entitled to an equitable remedy. (ECF No. 55 at 7-11.) However, Jeffrey Carnell's argument is misplaced. Wells Fargo's Motion for Summary Judgment does not ask this Court to impose an equitable lien. (*See* ECF No. 50.) Instead, Wells Fargo asks this Court to determine that the liens of the Wells Fargo mortgages are *themselves* valid—not to

-18-

conclude that equity *deems* a lien or mortgage to exist in lieu of an actual lien or mortgage. (*See id.*)

Consequently, because this Court has held that the Wells Fargo mortgages are valid based upon the authority conferred by the power of attorney and under Pennsylvania's "entireties presumption," the Court grants relief separate and distinct from the imposition of an equitable lien based upon unjust enrichment, and Jeffrey Carnell's arguments to the contrary are inapposite and unavailing. *See Herb*, 955 F. Supp. 2d at 447-51 (discussing equitable liens based on unjust enrichment).

**VII. Conclusion**

For the foregoing reasons, Wells Fargo's Motion for Summary Judgment (ECF No. 50) is **GRANTED**.

In sum, Anna Carnell had the express actual authority to bind Jeffrey Carnell to the Wells Fargo mortgages pursuant to his valid durable power of attorney. While the circumstances surrounding this case are unusual and certainly do not reflect best transactional practices by Anna Carnell, Wells Fargo, or the notaries, Pennsylvania law permits agents to bind their principal to loans and mortgages as long as they possess the requisite authority — regardless of whether they sign documents in a particular manner, present proof of their authority, or consciously consider the source of their authority when signing on behalf of their principal.

This Court does not condone or advise that transactions should occur as they did for the two Wells Fargo mortgages in this case, but this Court, nevertheless, holds that Pennsylvania law views Jeffrey Carnell as bound by the Wells Fargo mortgages.

A corresponding order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| WELLS FARGO BANK, N.A., | ) | Case No. 3:16-cv-130 |
|---|---|---|
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFREY A. CARNELL and ANNA M. | ) | |
| CARNELL, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

NOW, this $14th$ day of June 2018, upon consideration of the Motion for Summary Judgment (ECF No. 50) filed by Plaintiff Wells Fargo Bank, N.A., and for the reasons set forth in the Memorandum Opinion accompanying this Order, it is **HEREBY ORDERED** that Plaintiff Wells Fargo Bank, N.A.'s Motion for Summary Judgment (ECF No. 50) is **GRANTED**.

Accordingly, **IT IS ORDERED** as follows:

1) **FINAL JUDGMENT** is **HEREBY ENTERED** against Defendant Jeffrey A. Carnell and Defendant Anna M. Carnell on Count I and Count II of Wells Fargo Bank N.A.'s Complaint.

2) It is **HEREBY DETERMINED AND DECLARED** that Defendant Jeffrey A. Carnell and Defendant Anna M. Carnell are bound to the 2009 Wells Fargo Mortgage, recorded on April 7, 2009 in record book 1273, page 389 with the Bedford County Recorder of Deeds.

3) It is **HEREBY DETERMINED AND DECLARED** that the 2009 Wells Fargo Mortgage validly encumbers Defendant Jeffrey A. Carnell and Defendant Anna M. Carnell's full interest in the Property described therein (4139 Elk Lick Road, Everett, PA 15537, parcel number F11-19) as a mortgage lien.

4) The Bedford County Recorder of Deeds is **HEREBY DIRECTED** to record a copy of this Memorandum Opinion and Order to reflect the Court's determination in this matter.

5) The Bedford County Recorder of Deeds is **HEREBY DIRECTED** to make an appropriate notation in the relevant mortgage index to further reflect the Court's determination in this matter.

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**